Nathan N. and Anna Ingber v. Commissioner.
Ingber v. Commissioner
Docket No. 3753-62.
United States Tax Court
T.C. Memo 1964-262; 1964 Tax Ct. Memo LEXIS 77; 23 T.C.M. (CCH) 1595; T.C.M. (RIA) 64262; October 5, 1964
*77 Harold P. Schwartz, 16 Court St., Brooklyn, N. Y. for the petitioners. Robert A. Trevisani, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in the income tax of petitioners Nathan N. and Anna Ingber for their taxable year ended December 31, 1959, in the amount of $4,942.11. The sole issue remaining for decision is whether respondent correctly determined that, out of a total of $32,500 received by petitioner Nathan N. Ingber during 1959 in settlement of a lawsuit initiated by him, $30,853.63 constituted ordinary income and $1,646.37 represented long-term capital gain. The petitioners have conceded certain other adjustments made by respondent in their taxable income for the year 1959. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Nathan N. and Ana Ingber are husband and wife. They filed a joint income tax return, prepared on the cash method of accounting, for the calendar year 1959, with the district director of internal revenue, Manhattan, New York. Nathan N. Ingber will *78 hereinafter be referred to as petitioner. In May 1956, petitioner commenced a lawsuit in the Supreme Court of the State of New York, New York County, against his two brothers, David and Isaac W. Ingber (hereinafter referred to as David and Isaac), and two corporations and a partnership through which they carried on the business of manufacturing and selling women's handbags. Petitioner's primary purpose in bringing the action was to have his rights established as "an equal partner in the business," since his brothers refused to recognize his status as such. Petitioner's complaint set forth eight specific causes of action. In essence, petitioner asked for the following relief: (1) Specific performance of promises made by David and Isaac to convey to petitioner a one-third proprietary interest in the Ingber handbag business, including property formerly owned by the business but later conveyed by it to the wives of David and Isaac; (2) an accounting by the defendants of the earnings and profits of the Ingber handbag business due to petitioner because of his one-third interest therein; or (3) damages in the amount of $1,000,000. Petitioner's claims in the above action arose in connection *79 with, and as a result of, his association with the family business for a period in excess of 30 years. The Ingber handbag business was started in the year 1903 in the city of Philadelphia, Pennsylvania, by petitioner's father, together with petitioner's brothers David nad Isaac, who were then 19 and 15 years of age, respectively. Petitioner was 3 years old at that time. While he was going to school, petitioner worked in the family business on a part-time basis. When his father died in 1918, it became necessary for petitioner to secure full-time employment. Because of adverse conditions at the family handbag business and because his family was in need of additional money, petitioner went to work elsewhere. However, in 1921 petitioner returned to the Ingber handbag business at the request of his mother and brothers in order to assume the position as New York sales representative of the business. David and Isaac, at that time, promised petitioner that they would make him a partner after he learned the business. Petitioner commuted from Philadelphia to New York daily for a period of 9 years for the purpose of running the New York sales office. After 1930 petitioner moved to New York City *80 where he remained in charge of sales for the Ingber handbag business until his resignation in December 1955. During the above period, petitioner regularly participated in discussions with David and Isaac concerning the management of the business, and upon one occasion during the 1930's advanced $5,000 to the business. However, petitioner never received from his brothers any formal evidence of his proprietary interest in the family business despite his numerous requests therefor. Although David and Isaac upon each such occasion would assure petitioner that they intended to have the necessary papers drawn up, they, nevertheless, were successful in putting petitioner off with various excuses as to why it was then inappropriate to do so. The organization and operation of the Ingber handbag business have undergone a number of changes since the inception of the business. The business was operated in the form of a partnership from 1903 to 1933, and in the form of a corporation from 1933 through 1938. In 1935, the sales function of the business was transferred to a newly formed corporation, Ingber Bag Co., Inc. (hereinafter referred to as Sales Co.). In 1938, the manufacturing functions *81 of the business were once again taken over by a partnership, Ingber and Company (hereinafter referred to as the partnership). In 1947, however, the partnership transferred the assets relating to its manufacturing functions to a newly formed corporation, Ingber, Inc. (hereinafter referred to as Manufacturing), which, from that date to the time of the trial, has carried on the manufacturing operations of the business. The partnership has continued to remain in existence for the alleged purpose of providing management services for the various juristic entities involved in the Ingber handbag business. At all times relevant hereto, all of the stock outstanding in Manufacturing has been held by various members of the immediate families of David and Isaac, so that each family group retained approximately 50 percent of said stock. The issued and outstanding capital stock of Sales Co. has at all times relevant hereto consisted of 25 shares. When originally issued, 17 of the shares were held by petitioner's wife, and the remaining 8 shares were held by an individual named I. W. Halpren. However, on February 1, 1944, these shares of stock were cancelled, and Sales Co. issued 25 new shares *82 of stock, as follows: No. of
To Whom
Shares
Issued
1
Petitioner
1
David
1
Isaac
11
David's wife
11
Isaac's wife Petitioner's basis in his one share of stock was zero. On January 12, 1949, Isaac's wife transferred her 11 shares of stock in Sales Co. to her son Bernard. The shares of stock issued by Sales Co. to petitioner and his wife were the only tangible evidences of a proprietary interest in any part of the Ingber handbag business that petitioner ever possessed. Although petitioner served as the secretary of Sales Co. at least since 1947 until his resignation in 1955, he was at no time an officer of Manufacturing. Petitioner had little formal education, and although he was fully conversant with all matters relevant to the "selling end" of the business, he comprehended little of the technical refinements whereby the Ingber handbag business was proliferated into various "separate" juristic entities hereinbefore described. In so far as petitioner was concerned, "Both corporations [the various entities comprising the Ingber handbag business] was the same brothers, the partners." During the course of the lawsuit commenced by petitioner against *83 his brothers, the defense counsel therein, during his cross-examination of petitioner, attempted to show that petitioner had no authority in the Ingber handbag business but had to consult his brothers on any decision to be made. The judge in that action interrupted the trial at that point and interjected: Look, I don't think Nathan Ingber had to ask them anything. I think he was an important partner in this case. I think you people ought to get together and settle this case. The proceeding was then recessed and the three brothers went to lunch to explore the possibilities of settlement. At lunch, after rejecting several smaller offers made by David and Isaac, petitioner stated: "I will tell you what I will do, boys. For my share of the business, my stock, to release you of everything, I will take sixty-five thousand dollars." This figure was accepted. The brothers then returned to the court, whereupon an agreement entitled "STIPULATION OF SETTLEMENT" was entered into by petitioner and by David and Isaac on behalf of themselves as individuals and also on behalf of Manufacturing, Sales Co., and the partnership. The Stipulation of Settlement provides, in part, as follows: It is *84 hereby stipulated, consented to and agreed that this action is hereby settled upon the following terms and conditions: The Defendants will pay to the Plaintiff the sum of $65,000 in two installments, the first installment of $32,500 on February 11, 1959, and the second installment of $32,500 to be paid on the 13th of February, 1960, with interest on said sum of $32,500 for one year at the rate of three per cent per annum, and to be evidenced by a promissory note in that amount, carrying interest at three per cent, to be drawn by the Defendants Ingber, Inc., and David A. Ingber, and to be delivered to the attorney for the Plaintiff simultaneously with the first payment of $32,500 on February 11th, 1959. The Plaintiff and Plaintiff's wife, Anna Ingber, will execute and deliver general releases in the usual form to Ingber and Company, a Pennsylvania Corporation; Ingber, Inc., a Pennsylvania Corporation; Ingber Bag Company, Inc., a New York Corporation, and the following individuals: I. William Ingber, David A. Ingber, Benjamin Ingber and Bernard Ingber, individually and as partners in any firm doing or which heretofore did business under the name, including the name Ingber, and *85 also general releases to Isaac W. Ingber and Fannie C. Ingber, his wife, and David A. Ingber and Frances F. Ingber, and Bernard Ingber and Selma I. Gellman, trustees under deed of trust dated February 1, 1946, and also to Benjamin Ingber, trustee under a deed of trust dated February 1, 1946, these deeds of trust relating to the real property located at H and Westmoreland Streets, Philadelphia, Pennsylvania, and these releases shall be in such form that they shall also release any of the beneficiaries of said trusts. The Defendants and each of the individuals to whom releases are to be given will, in turn, give general releases in the usual form to the Plaintiff, and to Anna Ingber. It is understood that these releases will be executed at or about this time, and those executed by the parties represented by each of the attorneys will be held in escrow by the respective attorneys, and be delivered at the time of the making of the final payment. It is further agreed that the payments herein above provided shall be made as heretofore set forth, and shall be made to the order of the Plaintiff and Ungar & Liben, Esqs., Plaintiffs, attorneys, and shall be delivered to Plaintiff's attorneys *86 at their offices, and that upon the payment of the note due February 13, 1960, all those releases which are to be delivered by the Plaintiff shall be turned over to the Defendants' attorney, and all those releases which are to be delivered by the Defendants shall be turned over to Plaintiff's attorneys. It is further stipulated that the Plaintiff Nathan N. Ingber and Anna Ingber, for himself and herself, respectively, hereby acknowledge and agree that he and she, respectively, have no right, title, claim or interest in or to any stock or any certificate of stock, whether or not the same stands in his or her name, of Ingber and Company, a Pennsylvania Corporation; of Ingber, Inc., a Pennsylvania Corporation; of Ingber Bag Company, Inc., a New York corporation, and each of the said Nathan N. Ingber and Anna Ingber hereby assigns and transfers to each of said corporations any stock therein now standing in his or her name, respectively, and the said Nathan N. Ingber and Anna Ingber do hereby jointly and severally agree at their own cost and expense to defend and hold harmless each and all of said corporations against any and all claims which may be asserted against them or any of them *87 to such stock or certificate or certificates of stock, and they agree that they have not assigned, transferred or set over any such certificates to any other person, firm or corporation. It is further agreed that in the event this stipulation is carried out by the Defendants, the Plaintiff withdraws the Seventh and Eighth causes of action contained in the third amended complaint herein. It is understood that this agreement is binding upon the heirs, executors, assigns and administrators of the individual David A. Ingber and the Plaintiff and Anna Ingber, and it is further stipulated and agreed that in the event that the Defendants fail to make the payments herein before provided for, or either of them, when due, that the action herein may be restored upon five days notice to the attorney for the Defendant, without prejudice to the Plaintiff's rights to retain the first payment herein provided for, if made. It is further stipulated the note for $32,500 payable February 13th, 1960, shall be the note of Ingber, Inc., alone and shall be endorsed by David A. Ingber. * * *
In the course of their negotiations with petitioner, after they had agreed upon a settlement figure of *88 $65,000, David and Isaac indicated that they would like to be able to treat that amount as additional commissions, bonuses, or compensation to petitioner, so as to entitle the Ingber handbag business to a deduction therefor. Petitioner balked at this proposal because he regarded the $65,000 agreed upon as payment for his proprietary interest in the Ingber handbag business. At the time petitioner left the business in December 1955, there was no compensation, whether in the form of salary, bonuses, or commissions, due him for services theretofore performed for the Ingber handbag business. Petitioner's compensation for his services to the Ingber handbag business had, at least since 1947, emanated from two sources, namely, Sales Co. and Manufacturing. Thus, during the period from February 1, 1947, through January 31, 1956, petitioner had received compensation from Sales Co. (described in its ledgers as commissions and in its New York Corporation Franchise Tax Reports as salary to officers) in varying amounts ranging from a low of $14,150 for Sales Co.'s fiscal year ended January 31, 1947, to a high of $20,600 for Sales Co.'s fiscal year ended January 31, 1952. During the period February 1, 1948, through *89 January 31, 1954, petitioner also received compensation from Manufacturing, described in its ledgers as commissions, in varying amounts ranging from a low of $13,823.85 for Manufacturing's fiscal year ended January 31, 1953, to a high of $31,086.54 for Manufacturing's fiscal year ended January 31, 1951. From February 1, 1948, through January 31, 1954, the total compensation petitioner received from Sales Co. and Manufacturing averaged approximately $40,000 per year. In addition to petitioner, David and Isaac were officers of Sales Co. from February 1, 1947, through January 31, 1956. However, they received no compensation from that entity. The New York State Business Corporation Franchise Tax Reports filed by Sales Co. indicate that it declared the following dividends: Fiscal Year Ended
Dividends
January 31
Declared
1947
$25,000
1948
15,000
1949
0
1950
10,000
1951
15,000
1952
12,500
1954
0
1955
0
1956
0 Petitioner, for his taxable years ended December 31, 1949, through December 31, 1952, reported the following amounts, on his Federal income tax returns, as dividends received from Sales Co.: Taxable Year Ended
December 31
Amount
1949
$400.00
1950
600.00
1951
500.00
1952
150.00
*90 The remaining earnings and profits of Sales Co. during this period were accumulated to the end that as of January 31, 1956, it had earned surplus in the amount of $39,840.23 and total assets of $49,869.55. At all times relevant hereto, from the time of the incorporation of Manufacturing on February 1, 1947, through January 31, 1955, the officers of Manufacturing consisted solely of David and Isaac and their respective sons Bernard and Benjamin. Manufacturing, during this period, paid no compensation to its officers. These individuals were compensated through the device of a management fee which Manufacturing paid to the partnership. The partnership, at all times relevant hereto, from sometime in 1943, when Bernard and Benjamin obtained 25 percent interests therein, through January 31, 1955, has been composed of four equal partners, namely, David, Isaac, Bernard, and Benjamin. The management fee received during the period February 1, 1947, through January 31, 1955, by this group varied, ranging from approximately $45,000 to $148,000, and averaged approximately $109,000. Manufacturing paid no dividends to its shareholders between the time of its incorporation on February 1, 1947, and *91 January 31, 1955, so that as of its fiscal year ended January 31, 1955, it had an earned surplus of $390,795.99 and total assets of $629,295.22. The record does not indicate whether or not the partnership, in fact, performed any management functions for Manufacturing. It appears that, aside from this alleged connection with the Ingber handbag business, the only activity of the partnership was to invest and accumulate the individual assets of the partners. The $65,000 agreed upon by petitioner and his brothers, pursuant to the terms embodied in the Stipulation of Settlement, was paid to petitioner by Manufacturing in two installments, $32,500 in February 1959 and $32,500 in February 1960. Manufacturing treated the funds paid to petitioner in February 1959 as compensation, claimed a deduction therefor, and filed a Form 1099 relating to withholding. As previously indicated, petitioner had been fully compensated for his services to the Ingber handbag business at the time he left that business. At the time of his resignation, petitioner was the equitable, if not legal, owner of a proprietary interest in the Ingber handbag business. Petitioner had held this interest in excess of six *92 months. Respondent, by way of statutory notice of deficiency, determined that of the $32,500 received by petitioner during 1959 in accordance with the Stipulation of Settlement, $1,646.37 was received in exchange for petitioner's one share of stock in Sales Co. and the remaining $30,853.63 constituted ordinary income. Respondent increased petitioner's taxable income for 1959 by the latter amount, less certain expenses incurred by petitioner in connection with the lawsuit against his brothers. Opinion It has been conceded on behalf of petitioner that the $32,500 received by him during 1959, pursuant to the Stipulation of Settlement in the lawsuit initiated by him, constitutes income. The only question before us is what portion, if any, of the sum represents gain from the sale or exchange of a capital asset held in excess of six months. The starting point in cases involving the taxability of amounts received as the result of litigation or the settlement thereof is the question, "In lieu of what were the amounts paid under the settlement received?" , affd. (C.A. 8, 1962); certiorari denied *93 ; , affd. (C.A. 1, 1944), certiorari denied . Respondent's primary contention is that petitioner received substantially all of the $32,500 (or $32,500 minus $1,646.37 treated by respondent as paid in exchange for petitioner's one share of stock in Sales Co.) in settlement of his claim for his aliquot share of the profits of the partnership, Management. In the alternative, respondent argues that the aforesaid amount was received by petitioner in settlement of his right to compensation for services performed for the Ingber handbag business. Petitioner, on the other hand, contends the entire amount received by him was in payment for his proprietary interest in the Ingber handbag business conducted, as it were, through the various juristic entities named in the complaint filed by him in the Supreme Court of New York in 1956. In the alternative, petitioner contends that the entire amount received in settlement of his claim should be treated as payment for his one share of stock in Sales Co. Although the record now before us *94 leaves many gaps and can hardly be regarded as sufficiently complete so as to enable this Court to make a determination approaching mathematical certainty, a careful examination of the evidence presented convinces us that the major portion of the settlement proceeds received by petitioner was in exchange for the surrender of any proprietary interest possessed by him in the Ingber handbag business. We have set forth in some degree of specificity in our Findings of Fact the various factors upon which we have relied in reaching this conclusion. There are two factors, however, which we regard as more significant than the others. First of all, petitioner had been fully compensated for his services to the Ingber handbag business at the time of his resignation in late December 1955 and no further amounts of salary, bonuses, or commissions were owed to him. Secondly, from the evidence before us, it appears that the distributions of earnings and profits from the Ingber family handbag business among David, Isaac, and petitioner were roughly equivalent. Petitioner has so testified and we find his testimony credible. Moreover, the Federal tax returns filed by Manufacturing during its taxable years *95 ended January 31, 1948, through January 31, 1955, the New York Corporate Franchise Tax returns filed by Sales Co. placed before us in evidence, and pertinent portions of the books and records of both corporations substantiate petitioner's testimony. These various documents show that petitioner received an average compensation during this period, including salary, commissions, and bonuses from Sales Co. and Manufacturing, the aggregate of which was approximately $40,000. Petitioner's brothers David and Isaac, and their respective sons Bernard and Benjamin who joined the business in 1943, did not receive any salary but were compensated through the device of a management fee paid to the partnership. The entire management fee received by these persons averaged slightly in excess of $109,000 during the period beginning February 1, 1947, and ending January 31, 1955. Moreover, the record also indicates that Manufacturing paid no dividends during this period but accumulated an earned surplus of $390,795.99. Sales Co. did retain a substantial portion of its earnings so that as of January 31, 1956, barely in excess of a month after petitioner's resignation, it had an earned surplus of $39,840.23. *96 Sales Co., however, distributed dividends totaling $77,000 between February 1, 1946, and January 31, 1952. Although the evidence is not clear on this point, it does not appear that petitioner received more than a small fraction of this amount. Thus, some portion of petitioner's recovery from his brothers may have been to compensate him for his share of these distributions. As previously indicated, although the state of the record is such that it is difficult to render a determination with any degree of certainty, it does appear to us that the major portion of petitioner's recovery is in return for the relinquishment of any proprietary interest he had in the Ingber handbag business. Under these circumstances, it is incumbent upon us to make an allocation, despite the fact that our decision may be somewhat "roughly hewn." (C.A. 2, 1962), affirming in part and reversing in part ; and (C.A. 2, 1961), affirming a Memorandum Opinion of this Court. After a careful examination of all the evidence before us, it is our best judgment *97 (1) that 80 percent of the amount received by petitioner pursuant to the Stipulation of Settlement constituted payment for the release of his proprietary interest in the Ingber handbag business which he held in excess of six months, and thus represents long-term capital gain, and (2) that the remaining 20 percent of the proceeds represents ordinary income received by him for the release of his claim for an accounting. Decision will be entered under Rule 50.